UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LUV N' CARE, LTD.** | * | **CIVIL ACTION NO. 17-1592** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **PRECIOUS MOMENTS, INC.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a compound motion to dismiss, for more definite statement, and to strike portions of Precious Moments, Inc.'s counterclaim filed by defendant-in-counterclaim Luv N' Care, Ltd. [doc. # 19]. The motion is opposed. As detailed below, it is recommended that the compound motion [doc. # 19] be GRANTED IN PART and DENIED IN PART.

## Background

On December 8, 2017, Luv N' Care, Ltd. ("LNC") filed the instant declaratory judgment complaint against Precious Moments, Inc. ("PMI").[1] LNC alleged that it received a letter dated

---

[1] LNC invoked the court's jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a). However, neither the Declaratory Judgment Act, § 2201, nor the "Further Relief" statute, § 2202, confer federal subject matter jurisdiction in and of themselves. *Estrada v. Harris*, No. 14-0939, 2015 WL 3971462, at *4 (W.D. Tex. June 30, 2015) (citations omitted). Rather, when determining jurisdiction in a suit for declaratory judgment, the court must ask whether a federal question would be presented if a coercive action were brought by the declaratory judgment defendant. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 134 S.Ct. 843, 848 (2014) (citation omitted). As it turns out, the declaratory defendant in this case initiated a coercive action, via counterclaim, which seeks relief under federal trademark law, i.e., the Lanham Act, 15 U.S.C. § 1051, et seq. *See* Answer and Counterclaim. Thus, the declaratory judgment action itself arises under federal trademark law, thereby conferring subject matter jurisdiction. *Medtronic, supra*; 28 U.S.C. § 1338.

August 31, 2017, from a law firm representing PMI, which stated that PMI had learned that LNC was selling plush dolls with teardrop-shaped eyes. (Aug. 31, 2017, Letter from D. Martin to J. Hakim; Compl., Exh. A). The letter explained that PMI was the owner of U.S. Registration No. 2,288,646 (the "'646 Mark") that covered teardrop-shaped eyes on dolls. *Id*. The letter further stated that LNC's use of teardrop-shaped eyes infringed upon PMI's registered trademark. *Id*. Thus, the letter demanded that LNC cease and desist the sale of any infringing products, and disclose the SKUs and retailers where LNC's products were sold so that PMI could 'calculate the reasonable royalty owed by LNC. *Id*.

LNC does not agree that the eyes on its Prayer Pal products infringe upon PMI's trademark. Therefore, it maintains that it was not required to obtain authorization from PMI to sell its Prayer Pal products, and seeks a judgment declaring that, 1) it has not and does not infringe upon PMI's trademark, and 2) PMI's trademark is invalid. (Compl., Prayer). LNC also seeks an award for costs, disbursements, and reasonable attorney's fees. *Id*.

On February 15, 2018, PMI filed its answer and counterclaim whereby it asserted that it was the owner of the '646 Mark that it had used in interstate commerce since December 1981. (Ans. & Counterclaim). PMI also asserted that between 2002 and 2013, it entered into a series of license agreements concerning LNC's use of the teardrop-shaped eyes that appear on PMI's products. *Id*. The license agreements spanned the following periods: 2002-2004, 2005-2006, 2007-2008, 2009-2010, and 2011-2013. *Id*. Although some language within the contracts changed over time, they uniformly prohibited LNC from seeking cancellation of the '646 Mark and from challenging the validity of the '646 Mark. *Id*.

In 2013, LNC terminated its licensing relationship with PMI. Unbeknownst to PMI and without its authorization, LNC began manufacturing and selling products using the '646 Mark

teardrop-shaped eyes.  LNC's counterclaim sets forth six counts:  I) trademark infringement in violation of 15 U.S.C. § 1114(a); II) federal dilution in violation of 15 U.S.C. § 1125(c); III) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); IV) trademark infringement in violation of Louisiana common law; V) breach of contract; and VI) a request for attorney's fees.  PMI seeks resulting damages, declaratory and injunctive relief, plus fees.

On March 22, 2018, LNC filed the instant motion to dismiss, for more definite statement, and to strike.  By this motion, LNC seeks dismissal of Counts IV and V of PMI's counterclaim for failure to state a claim upon which relief can be granted.  The motion also petitions the court to strike ¶¶ 14 and 15 of the counterclaim because it referenced a Christian chapel and a non-party foundation.  In its reply brief, LNC conceded that it was not urging a motion for more definite statement; rather, the reference to that procedural device had been in error.

On April 13, 2018, PMI filed its opposition to the compound motion.  [doc. # 24].  On April 24, 2018, LNC filed its reply.  [doc. # 35].  Thus, the matter is ripe.

## Analysis

**I.      Motion to Dismiss**

    a)      <u>12(b)(6) Standard of Review</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[2] Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. In addition, a court is compelled to dismiss an otherwise

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

  b) <u>Discussion</u>

    1) *Trademark Infringement under Louisiana Common Law*

LNC seeks dismissal of PMI's Count IV for trademark infringement pursuant to the "common law" of Louisiana, because Louisiana does not recognize such a claim. *See Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 283 (W.D. La.1991), aff'd sub nom. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587 (5th Cir.1993). Rather, in lieu of a "common law" cause of action, Louisiana provides a *statutory* cause of action for trademark infringement. *Id*. (citing La. R.S. § 51:222).

Indeed, in Louisiana, the sources of law are legislation and custom. La. Civ. Code Art. 1. Case law is not considered positive law. *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 707 (5th Cir.1995), as modified on reh'g (Aug. 24, 1995). A fortiori, common law concepts developed through the case law in other jurisdictions are not binding on Louisiana courts. *Id*.

(citation omitted).³ Accordingly, the court finds that PMI does not enjoy a plausible claim for relief on Count IV, which is presently styled as a claim for trademark infringement under Louisiana common law. Certainly, however, PMI may amend its counterclaim to assert a claim under Louisiana statutory law, if appropriate, or the applicable common law of some other state. *See* discussion, *infra*.

### 2) Breach of Contract

As stated earlier, PMI and LNC entered into a series of five license agreements, lasting two years each, that accorded LNC a license to sell merchandise utilizing PMI's intellectual property. In its counterclaim, PMI cited a provision from the 2007 Agreement which provides that,

> [t]he Licensee [LNC] shall not, during the period of this Agreement or thereafter, directly or indirectly: (a) assert any interest or property rights in any of the Trademarks or any word or phrase confusingly similar with any of the Trademarks or associated with the Property; or (b) register, attempt to register, or adopt any of the Trademarks, or any word or phrase confusingly similar with any of the Trademarks or associated with the Property, as a trademark, service mark, trade name, corporate name, or Internet domain name; or (c) challenge or deny the validity of the Trademarks or PMI's ownership of the Trademarks; or (d) permit or acquiesce in any of the foregoing activities by any of the Licensee's subsidiaries, manufacturers, approved distributors, shareholders or other owners of an equity interest, or the agents or employees of any of the foregoing, or of the Licensee.

(Counterclaim, ¶ 23, *see also* doc. # 27).

Furthermore, under the 2007 Agreement, the term "Trademarks" means "the name of the Property, PRECIOUS MOMENTS, the names associated with the Artwork, and all other

---

³ In *Louisiana Fish Fry Products, Ltd. v. Bruce Foods Corp.*, Judge Brady declined to "blindly follow" Judge Scott's holding in *Matrix Essential* that there was no common law cause of action for trademark infringement under Louisiana law. *Louisiana Fish Fry Products, Ltd. v. Bruce Foods Corp.*, No. 11-557, 2013 WL 2458445, at *5 (M.D. La. June 6, 2013). Given Louisiana's civilian tradition, however, this court does not share Judge Brady's reservations concerning *Matrix Essential*.

trademarks used in connection with the Property." (Counterclaim, ¶ 21).  In 2009, the parties amended the 2007 Agreement to extend its terms and to modify the royalty payments. [doc. # 28].  Otherwise, all other terms and conditions remained in effect.  *Id*.

In 2010, LNC and PMI entered into a new two year, stand alone license agreement (the "2010 Agreement").  [doc. # 21].  Like the 2007 Agreement, the 2010 Agreement included a clause prohibiting LNC from challenging or denying the Trademark.  (2010 Agreement, ¶ E(6)).  In contrast to the 2007 Agreement, however, the term, "Trademark," was limited to the following mark,



*Id*., ¶1(k), Sched. C.

Consequently, PMI seeks to assert its rights under the 2007 Agreement.

LNC contends that the 2007 Agreement, and all other prior agreements, were superseded by the 2010 Agreement, via the following merger/integration clause, "[t]his Agreement contains the entire understanding of the parties with respect to the subject matter.  Any and all representations or agreements by an agent or representative of either party to the contrary shall be of no effect."  (2011 License Agreement, ¶ M(8) [doc. # 21]).  For its part, PMI maintains that the pertinent sections of the 2007 Agreement survive its expiration/termination, pursuant to a survival clause:

> [t]he rights and obligations of the parties with respect to paragraph 4 and Sections A(1), C, D, E. F. G, H, K(4), K(5), K(6), and M of this Agreement and any remaining royalty obligations of the Licensee, as well as any term, provision, or

>condition which expressly continues beyond the date of expiration or termination of this Agreement, or which is required for the interpretation of this Agreement or necessary for the full observation and performance by each party of all rights and obligations arising prior to the date of expiration or termination of this Agreement, shall survive any expiration or termination of this Agreement.

(2007 Agreement, ¶ M(13)).

Citing New York law,[4] LNC argues that a subsequent contract regarding the same matter supersedes the prior contract. *See Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir.2011) (citations omitted). Furthermore, "where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement." *Lnzro Pizza Empire, Inc. v. Brown*, 229 A.D.2d 947, 948, 645 N.Y.S.2d 379 (1996)

Be that as it may, the court is not persuaded that the subject matter of the 2007 and 2010 agreements are precisely the same, or that the parties necessarily intended via the 2010 Agreement to supersede all aspects of the prior agreements. By its terms, the 2007 Agreement licensed LNC to use certain copyrights and trademark*s* owned by PMI. *See* 2007 Agreement, ¶ 2(a). Consistent with its use of the plural form of the word, "trademark," the 2007 Agreement more broadly defined the term to include "all other trademarks used in connection with the Property." In contrast, the 2010 Agreement granted LNC the license to use the "Copyrights and Trademark," where "trademark" was defined as a single mark. *See* 2010 Agreement, ¶¶ 2(a) and 1(k).

In other words, the 2007 Agreement potentially encompassed the licensing of the trademark for the teardrop-shaped eyes at issue in this case, which was not contemplated by the

---

[4] The agreements contain a choice of law provision which specifies that New York law shall apply to all disputes arising from or related to the agreement. *See e.g.*, 2010 Agreement, ¶ M(9). The parties do not dispute that New York law applies to this issue.

2010 Agreement. As a result, the 2010 Agreement arguably does not govern the same subject matter as the 2007 Agreement, and does not supersede or merge the prior agreement(s), either via the merger/integration clause or by law.

Accordingly, PMI's breach of contract allegations related to the 2007 Agreement state a *plausible* claim for relief. In addition, PMI's breach of contract count is not limited to the 2007 Agreement; rather, it seeks relief for breach of the "Contracts." (Counterclaim, Count V). PMI maintains that it has alternative remedies available under the 2010 Agreement. Dismissal is not warranted.

**II.    Motion to Strike**

PMI devoted two paragraphs of its counterclaim to background information regarding the creation of a chapel and a foundation by PMI's artist and creator, Samuel Butcher. (Counterclaim, ¶¶ 14-15). Apparently, the murals at the chapel include figures that bear the teardrop-shaped eyes that have become well-known symbols of PMI and its products.

LNC seeks to strike the foregoing paragraphs because it believes that the only purpose of the allegations is to underscore the religiosity of PMI's founder, and to create an association with another non-party charitable enterprise. LNC argues that PMI's goal is to confuse and prejudice the jury by associating itself with a Christian charity in an unsubtle attempt to curry favor with jurors.

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are disfavored and infrequently granted." *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp.2d 763, 767 (N.D. Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)). As the Fifth Circuit has noted:

9

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953).

As an initial matter, the court observes that juries do not see pleadings. *Arch Chemicals, Inc. v. Radiator Specialty Co.*, 653 F. Supp.2d 1099, 1109 (D. Or.2009). Thus, LNC's concern that PMI intended to sway the jury is not well-taken. Second, the court does not find the allegations at issue to be scandalous, which stands in contrast to the lone case cited by LNC, where the plaintiff endeavored to cast his opponent in a negative light. *See Shinde v. Nithyananda Found.*, No. 13-0363, 2013 WL 1953707, at *10 (C.D. Cal. May 10, 2013).

Finally, PMI's allegations strive to provide some background for the goodwill associated with its teardrop-shaped trademark. Accordingly, the challenged paragraphs have some relevance to the case. Furthermore, as PMI pointed out, its allegations are no different in substance from ¶ 7 of LNC's complaint which also serves to provide a brief background of the company. Indeed, were the court to police all pleadings in every case for relevance, it would have little time for anything else. LNC simply has not demonstrated circumstances sufficient to warrant striking portions of PMI's counterclaim.

## Conclusion

The court finds that Count IV of PMI's counterclaim fails to state a claim for relief under the common law of the State of Louisiana. However, the court is obliged to "freely" grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . ." *Great Plains Trust Co. v. Morgan Stanley*

*Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that PMI can cure Count IV of its counterclaim via amendment. Accordingly, the instant recommendation for dismissal of Count IV is subject to PMI's opportunity to seek leave of court to amend its counterclaim with a proposed pleading that cures the deficient allegations – within the deadline to file objections to this report and recommendation.

Conversely, PMI has alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support the elements of its Count V breach of contract claim. *Twombly, supra*. Accordingly,

IT IS RECOMMENDED that defendant-in-counterclaim Luv N' Care, LTD' motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 19] be GRANTED-IN-PART, and that, absent timely amendment, Count IV of Precious Moments, Inc.'s counterclaim be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the remainder of the compound motion to dismiss, for more definite statement, and to strike [doc. # 19] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

11

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 29th day of May 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE